UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| MAGGIE ACHORN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 1:08-cv-125-JAW |
| | ) | |
| THE PRUDENTIAL INSURANCE | ) | |
| COMPANY OF AMERICA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF DECISION**

Maggie Achorn, who suffers from Reflex Sympathetic Dystrophy, now known as Complex Regional Pain Syndrome, has brought a complaint alleging that Prudential Insurance Company and MBNA Group Long-Term Disability Plan have wrongfully terminated her disability benefits. She has filed a Motion to Amend the Administrative Record (Doc. No. 17) and a Motion to Conduct Discovery (Doc No. 18). I will address each motion in turn.

**A.      Motion to Amend the Administrative Record**

Achorn wants to amend the administrative record in four respects:

1. She requests that the Court strike the "independent" medical examination done by MLS National Medical Evaluation Service, Inc., on January 3, 2008;

2. She requests that the record be supplemented with expert disclosures respecting file reviewers and examiners per Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure;

3. She requests that the Court strike the document stamped MGA 0011; and

    4. She requests that the record include any evidence admitted in connection with her Motion to Conduct Discovery.

(Pl.'s Mot. to Amend, Doc. No. 17.) I address these in the order they are raised.

### 1. The last independent medical exam

Achorn argues that the medical examination, which was not conducted until nearly 8 months after she appealed the initial termination of benefits and more than a month after she appealed the termination for the second time, should be stricken from the record because the only purpose of this evaluation was to obtain a factual record for the purposes of the appeal. (Mot. to Amend at 3.) Achorn cites Kosiba v. Merck, 384 F.3d 58 (3d Cir. 2004), in support of her argument. (Id.) In Kosiba, the Third Circuit remanded an ERISA benefits claim for application of a more "heightened" standard of review where the third-party claims administrator required a medical opinion during the pendency of an appeal based on the plan administrator's request for a new opinion. Id. at 63. The court concluded that the plan administrator's intervention reflected that it had not acted as a disinterested fiduciary, but had exerted influence upon the claims administrator, and, therefore, the administrator's subsequent adverse determination based on that new independent examination could no longer be reviewed based on the arbitrary and capricious standard. Id. at 67-68. Kosiba merely stands for the proposition that procedural irregularities should be considered by a court when it determines how deferential a standard of judicial review should be applied to a decision denying benefits. The case does not suggest, nor does it seem a logical extension to me, that the remedy is striking documents from the record. The examination in question is part of what the decision makers relied upon in denying benefits. If there is anything irregular about it that can be addressed in the parties' substantive briefing. The request to strike is denied.

### 2. Expert disclosures

Achorn requests that the administrative record should be supplemented with expert disclosures required under Fed. R. Civ. P. 26(a)(2)(B) and that the disclosures should include the photographs and underlying data referenced by the examiners. (Pl.'s Mot. to Amend at 3-4.) Prudential's response is straightforward. It observes that Rule 26(a) does not apply to an ERISA administrative review because Rule 26(a) applies only to *expert testimony*.[1] (Def.'s Opposition to Pl.'s Mot. to Amend at 6, Doc. No. 19.) Furthermore, according to Prudential, the decision maker did not have the photographs or underlying data when the claim for benefits was decided and, generally speaking, the parties are not permitted to supplement the record with material not considered by the plan administrator. (Id. at 6-7.) I agree with Prudential that the record is appropriately limited, in this instance, to the medical reports provided to Prudential. Prudential has identified the authors of the reports it reviewed in making its claim determination, so the authors are not unknown to Achorn, and the photographs and other underlying data need not be disclosed unless they became part of Prudential's claim file. Although there is no "ironclad" rule against admitting new evidence, the Court's review is normally limited to the record that was before the claim administrator and Achorn has not even articulated any explanation for why the photographs or other underlying data would be important to the Court's review. See Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003) (stating that review is presumptively "on the record made before the entity being reviewed" and that "some very good reason" is required to deviate from that

---

[1] Achorn has also reiterated these requests in her motion for discovery and it seems to me that the sort of information she seeks would come to her, if at all, by means of that vehicle, not by the invocation of Rule 26(a).

3

presumption); <u>Orndorf v. Paul Revere Life Ins. Co.</u>, 404 F.3d 510, 519-20 (1st Cir. 2005) (same).

### 3. Misplaced document

Achorn requests that the document stamped MGA 0011 be stricken from the record because it is a notice of electronic filing in another case that was inadvertently included. No one seems to be disputing that fact and the document is stricken.

### 4. Supplementing the administrative record with items obtained in court-authorized discovery

Finally, Achorn requests that any documents produced as a result of court ordered discovery should be included in the record. To the extent this Court may order some limited form of discovery, it seems entirely logical that Achorn should have a means to put the newly acquired knowledge before *this* court. However, I think that supplementing the administrative record is a questionable vehicle by which to accomplish that end. If Achorn is ultimately allowed to conduct court-ordered discovery in some form, following the close of the discovery period she may file an appropriate motion to supplement *this* Court's record with additional material or testimony, identifying precisely what it is that she has obtained and precisely why it should be considered in the judicial review process. A decision about the inclusion of that material can only be made after the nature of the material is known to the court.

Based upon the foregoing, Plaintiff's Motion to Amend the Administrative Record (Doc. No. 17) is denied, except that document MGA 0011 is stricken from the record.

### B. Motion to Conduct Discovery

Achorn seeks an opportunity to conduct discovery into the conflict of interest that defendant Prudential has on account of the fact that Prudential is both the claims

4

administrator that decided her claim and the insurer that would pay her claim had it not decided to terminate her benefits.  She would like the opportunity to discover "whether Prudential maintains procedures which reduce potential bias such as segregating claims administration from financial administrators and managers" and "whether Prudential has a system in place for penalizing inaccurate decision making without regard to which party the inaccuracy benefits."  (Mot. to Conduct Discovery at 2-3, Doc. No. 18.)  Achorn bases her motion on the Supreme Court's recent opinion in Metropolitan Life Insurance Company v. Glenn, 128 S. Ct. 2343 (2008).  There, the Supreme Court considered what the standard of review should be in an ERISA action challenging a claim determination made by a claim administrator that both funds and decides the employee benefit claim.  The Court acknowledged what several circuit courts of appeal had already stated, that this circumstance creates a conflict of interest that courts need to consider as a factor when deciding whether the administrator abused its discretion and that the significance of the factor depends on the circumstances of the particular case.  Id. at 2346;  see also Denmark v. Liberty Life Assurance Co., 481 F.3d 16, 30-31 (1st Cir. 2007) (discussing circuit opinions prior to the Supreme Court's opinion in Glenn).  Contrary to what Achorn's motion suggests, Glenn is not a case about discovery and the Supreme Court did not state that reviewing courts should or should not permit discovery to explore the particular dimensions of an administrator's conflict.  When it comes to discovery in a case involving review of an ERISA benefits determination, the law in this Circuit is still set by Liston.  See DuBois v. Unum Life Ins. Co. of Am., 2008 U.S. Dist. Lexis 53970, *2, 2008 WL 2783283, *1, Civ. No. 08-163-P-S (D. Me. July 14, 2008) (Mag. J. Rich, Mem. Dec. and Order on Pl.'s Objection to Scheduling Order).  Thus, there must be "at least

some very good reason . . . to overcome the strong presumption that the record on review is limited to the record before the administrator." Liston, 330 F.3d at 23.

In Liston, the First Circuit affirmed a decision to deny discovery into how the administrator decided claims presented by other employees seeking benefits under the same "officer severance plan" where the facts suggested that the decisions on such claims would not easily be measured against the decision on the plaintiff's claim due to the absence of any easily comparable factors among the group of claimants with respect to the requirements set by the plan. Id. at 26. In Orndorf, the First Circuit affirmed a decision to deny supplementation of the record that would have enabled the plaintiff to present new evidence going to the merits of his claim. To permit a claimant to supplement his claim on the merits during judicial review would have been error, the First Circuit decided, because it would have completely undermined the administrative process and the interests in finality and exhaustion that are hallmarks of that process. 404 F.3d at 519.

To her credit, Achorn is not requesting leave to engage in discovery or to supplement her claim in relation to the merits. She seeks, instead, to discover potentially salient details about bias and procedural irregularity. Specifically, she wants to discover more about the following:

1. Why Prudential encouraged her to pursue social security benefits but disregarded the Social Security Administration's determination that she was disabled  (Pl.'s Mot. to Conduct Discovery at 4-5);

2. Whether Prudential has procedures that separate individual claims administrators from oversight based on Prudential's own financial interests or penalizes inaccurate decision making without regard to the financial outcome for Prudential (Id. at 5-6);

6

> 3. Whether Prudential has a history of biased claims administration, including why Prudential chooses to maintain relationships with particular independent medical review firms, how heavily it relies on particular firms, and "how many and what percentage of cases referred to these . . . firms resulted in a finding for the claimant." (Id. at 4.)

Prudential objects to all of these proposals, arguing that Achorn has not introduced any specific evidence tending to suggest that these avenues of discovery will divulge anything likely to impact the Court's review. (Def.'s Opposition at 2-3, Doc. No. 20.) In the view of Prudential, discovery along these lines should be foreclosed unless the claimant can offer some "case-specific evidence" of bias to suggest that discovery is warranted. (Id. at 3-4.) I will independently address each category of discovery that Achorn wants.

   1.     **Social security determination**

Achorn asserts that there are certain similarities between her claim and the claim under review in Glenn. In particular, she notes that the Court of Appeals in Glenn had concluded that the administrator abused its discretion based, in part, on the fact that it had encouraged Glenn to pursue social security benefits, but then ignored the favorable determination of the Social Security Administration (SSA) when it later decided that Glenn was able to perform certain work. Id. at 2351-52. This factor and others combined in a way that justified a reversal of the administrative decision despite the arbitrary and capricious standard of review. Id. at 2352. Achorn asserts that Prudential similarly had her seek disability benefits from the SSA to reduce the level of benefits it was paying her and then ignored the SSA's determination that she was disabled. She would like to serve interrogatories "to determine what was the rationale" for ignoring the SSA's decision. (Pl.'s Mot. to Conduct Discovery at 5.) This request is denied. Some documents related to the SSA determination are part of Prudential's proposed

administrative record, including Prudential's offer to enlist the services of a third-party to help Achorn obtain social security benefits. To the extent that some other SSA materials are not present in the administrative record, Achorn has not yet requested that they be added to the administrative record. She only asks to conduct discovery about Prudential's "rationale" for not adhering to the SSA determination. This appeal is about the reasonableness of Prudential's rationale for denying benefits. There could be any number of reasons why that decision would differ from the SSA's earlier determination, including the development of new evidence. I will not order Prudential to explain away the SSA determination. If Prudential's benefits determination is in conflict with the SSA determination, Achorn may assert that argument in her brief and the Court may assign to that factor whatever weight it deserves.

### 2.   Insulating claims administrators from financial concerns

Achorn points to the majority opinion in Glenn in support of her request for discovery about any steps Prudential might take to insulate individual claims administrators from those company managers with oversight of Prudential's financial performance, and similar inquiries along these lines. (See Mot. to Conduct Discovery at 5.) In Glenn, the majority pondered, in *dicta*, situations that might serve as "tiebreaker[s]" when a case is "closely balanced." 128 S. Ct. at 2351. It stated that a conflict might prove more determinative when the administrator "has a history of biased claims administration," as compared to when the administrator "has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits."

Id.  I am not persuaded that this *dicta* justifies routine discovery quests into the particulars of how the administrator manages its structural conflict of interest in terms of its supervisory chain of command, organizational chart, or disincentives for inaccurate decision-making.  It is already established that Prudential funded Achorn's benefits and made the decision to terminate them.  This structural conflict, in other words, is already a factor for the Court to weigh in its review.  If additional information were already available and it suggested that the inherent conflict of interest (already well understood) is more weighty than normal, then perhaps in an appropriate case some discovery might be permitted.  However, in the absence of some preliminary showing suggesting that the conflict is actually *enhanced* by some organizational factors, I am not inclined to permit this kind of discovery.  The mere absence of special or affirmative measures to wall off claims administrators from overall financial performance concerns, in and of itself, does not establish any *enhanced* conflict or bias, in my view.  However, should the administrator introduce evidence in its own favor on this question, in an attempt to reduce the weight of the structural conflict factor, then such an attempt might warrant some discovery to put the claimant on equal footing and to enable the court to better understand the workings of any internal structural or procedural measures that might exist.

### 3. A history of bias

Achorn offers no evidence suggesting a history of biased decision making by Prudential, but she would like leave to discover information about Prudential's reliance upon the two independent medical review or referral firms that were utilized in her case (Medical Resource Group and MLS National Medical Evaluation Services), including some statistics about the recommendations provided by these firms or doctors in their

9

referral networks. In particular, Achorn proposes interrogatories to determine how much money Prudential paid them, how many and what percentage of the claims administered by Prudential were referred to each, how heavily it relies on particular firms, and the percentage of referrals that ultimately result in a finding that favors the claimant. (Pl.'s Mot. to Conduct Discovery at 4.) In opposition, Prudential states that the proposed discovery is not only improper, but would not divulge what Achorn wants to discover. According to Prudential, the firms in question are merely "third-party liaisons between Prudential and [the] independent physician reviewers who assisted Prudential in evaluating [her] claim." (Def.'s Opposition to Pl.'s Mot. to Conduct Discovery at 4, Doc. No. 20.)

      I conclude that limited discovery targeted at these medical review or referral entities is appropriate. The information, after all, explores the existence of a potential procedural bias where it is already known that a structural conflict exists. In its fiduciary capacity as a claims administrator, Prudential has an obligation to seek out objective assistance when it decides that a referral for a file review or an independent medical examination is needed. Despite Prudential's fiduciary duty to refrain from biased decision-making, however, these review or referral firms do not owe any fiduciary duties to plan beneficiaries and they also serve a market in which many of the customers are like Prudential, customers with a recognized financial interest in the outcome of any independent review or examination that is conducted by doctors within the referral networks. How these firms go about developing and maintaining networks of physicians or other medical experts in order to serve *their* customers is therefore very relevant to the existence of procedural bias. If Prudential is utilizing third-party service providers whose

10

services routinely result in claim denials, that is something that is likely to be understood by Prudential and would be highly suggestive that the referral process is itself biased. As the majority stated in Glenn, "ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator 'discharge [its] duties' in respect to discretionary claims processing 'solely in the interests of the participants and beneficiaries' of the plan." Glenn, 128 S. Ct. 2350 (quoting 29 U.S.C. § 1104(a)(1)). In this context, it is only fair that a claimant be able to obtain some information about the third-party agents who make referrals within the medical community that the fiduciary relies upon or adopts to support the denial of benefits, at least in cases where the fiduciary operates under a structural conflict of interest and has relied on the services and referrals of its own third-party agents to deny benefits. Accordingly, I will grant Achorn leave to serve interrogatories on Prudential to determine some of what she seeks, though I limit it in certain regards. Prudential is ordered to disclose the following to Achorn on or before October 30, 2008:

1. The rate and amount of compensation paid to the two third-party firms in question for their services, including compensation for the services of any other third-parties engaged by them, in turn, to review Achorn's claim for benefits.

2. The total number of claims administered by Prudential under the subject MBNA Group Long Term Disability Plan in 2005, 2006, 2007, and through the second quarter of 2008.

3. The total number of claims referred to in question 2 that were referred to the identified third-party firms, with separate figures provided for each firm.

4. The total number of claims referred to in question 3 that resulted in a recommendation by the third-party reviewer that benefits be denied or terminated.

5. The total number of claims referred to in question 4 that actually resulted in a denied claim.

## Conclusion

Plaintiff's Motion to Amend the Administrative Record (Doc. No. 17) is DENIED.  Plaintiff's Motion to Conduct Discovery (Doc. No. 18) is GRANTED, IN PART.

## CERTIFICATE

Any objections to this Memorandum of Decision shall be filed in accordance with Fed.R.Civ.P. 72.

*So Ordered.*

September 25, 2008                    /s/ Margaret J. Kravchuk
                                      U.S. Magistrate Judge